IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY SCOTT SCHWENK, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 20-1807 |
| | : | |
| v. | : | |
| | : | |
| CORRECTIONS OFFICER LOPEZ, | : | |
| PRIMECARE MEDICAL, BERKS | : | |
| COUNTY JAIL, and STACEY ACKER, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                    September 21, 2020

The *pro se* plaintiff is a former convicted inmate who was housed at a county jail. He has filed an application for leave to proceed *in forma pauperis* and a complaint asserting violations of his Eighth Amendment rights under 42 U.S.C. § 1983 based on the conditions of his confinement and for cruel and unusual punishment. He has sued the county jail, the company providing medical services at the jail, and two county corrections officers.

In the complaint, the plaintiff generally asserts that the county jail and the medical provider provided him inadequate medical care for his gastrointestinal issues and failed to assist him when he requested assistance. He also alleges that the corrections officers humiliated him, gave him write ups for unsanitary conditions, and even placed in him solitary confinement after he had issues with his bowels while outside for recreation.

As discussed below, the plaintiff may not assert a section 1983 claim against the county jail because it is not a "person" amenable to suit under the statute. Also, the plaintiff has failed to state a plausible claim against the medical provider because he has not alleged that it had an unconstitutional policy or custom that caused the alleged constitutional violations. Regarding the

corrections officers, he may not maintain an action for deliberate indifference to his serious medical needs against them insofar as they are nonmedical personnel and he does not allege that they were aware that the medical provider was improperly treating him. In addition, he has not stated plausible Eighth Amendment claims for cruel and unusual punishment insofar as he asserts that they ridiculed or humiliated him because of his gastrointestinal issues and has not included sufficient allegations showing that they deprived him of the minimal civilized measure of life's necessities.

Accordingly, the court will (1) grant the application for leave to proceed *in forma pauperis*, (2) dismiss the complaint, and (3) grant leave to the plaintiff to file an amended complaint to attempt to assert a plausible claim against the medical provider and an Eighth Amendment claim against an individual defendant based on deliberate indifference to his serious medical needs.

## I.    ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Jeffrey Schwenk ("Schwenk"), appears to have commenced this action by first filing an application for leave to proceed *in forma pauperis* (the "IFP Application") and a prison trust fund account statement that the clerk of court docketed on March 10, 2020. Doc. Nos. 2, 3. He then filed a complaint, which the clerk of court docketed on April 3, 2020.[1] Doc. No. 1. In the complaint, Schwenk names four defendants: Corrections Officer Lopez ("Lopez"), PrimeCare Medical, Inc. ("PrimeCare"), Berks County Jail ("BCJ"), and Stacey Acker ("Acker"). Compl. at ECF pp. 2–8, Doc. No. 1. Schwenk sues the individual defendants in their individual capacities and the institutional defendants in their official capacities. *Id.* at ECF pp. 3, 8.

---

[1] Schwenk filed these documents while incarcerated, but he did not file his complaint until after he was released. In the complaint, Schwenk reiterated his desire to proceed *in forma pauperis* following his release because he had no income and had been unable to find work due to the COVID-19 pandemic. Compl. at ECF p. 1.

Schwenk's claims generally arise from allegations that (1) he suffered from continued gastrointestinal illness while in BCJ, which he attributes to the food, (2) he received deficient medical treatment to address his illness, and (3) Acker and Lopez ridiculed and punished him due to his illness. *Id.* at ECF pp. 4–7, 9–10, 12–14. More specifically, Schwenk alleges that on the evening of December 16, 2019, following a search of his cell, Lopez displayed a pair of soiled underwear to the entire cellblock and, through a verbal exchange with Schwenk, publicly identified the underwear as Schwenk's. *Id.* at ECF p. 4. Although Schwenk tried to explain to Lopez that he had a medical condition and the food at BCJ made him sick, Lopez restricted Schwenk to his cell for 24 hours and did not allow him to take a shower. *Id.*

Schwenk also alleges that he filed three separate grievances relating to his efforts to obtain medical care from PrimeCare, which provides medical services at BCJ. *Id.* He sought care for diarrhea and explained that BCJ's food caused the diarrhea. *Id.* at ECF p. 4. He "begged and pleaded with [PrimeCare] to put [him] in medical quarantine or give [him] single cell status so [he] could deal with [his] medical issue because [he] was going to the bathroom in [his] pants." *Id.* at ECF pp. 4–5. Instead of complying with his request, PrimeCare gave him Pepto Bismol, Maalox, Tums, Bentyl, and a fiber pill. *Id.* at ECF p. 5. Apparently, none of these items helped Schwenk, and his mother told him to ask for Imodium, which successfully stopped his diarrhea after PrimeCare provided it to him. *Id.*

Although the Imodium stopped the diarrhea, PrimeCare stopped giving it to him, so his symptoms returned. *Id.* This repeatedly occurred, as medical providers "Gabe" and "Jesse" (who are not named as defendants) "put [him] on the medication that worked then took [him] right back off." *Id.* at ECF p. 10. Schwenk also specifically notes that, at the time he drafted the complaint,

he had, at his request, been provided with Imodium again after being off of it for three days. *Id.* at ECF p. 5.

Schwenk claims that due to the diarrhea, he received reprimands for his unsanitary condition. *Id.* at ECF pp. 5, 6. He filed grievances, but BCJ denied them. *Id.* at ECF p. 6. He asserts that BCJ and Warden J. Quigley (who is not a named defendant) did not care about him and failed to help him. *Id.*

In addition to the aforementioned allegations, Schwenk alleges that on October 2, 2019, Acker and another corrections officer, "C.O. Loomis" (who is not a named defendant), were laughing at him. *Id.* Thereafter, C.O. Loomis locked him in the "bird cage" during outside recreation for a half hour, where he had a bout of diarrhea. *Id.* Schwenk claims that he was then punished with two days in solitary confinement. *Id.* C.O. Loomis told him that Acker instructed C.O. Loomis to write up Schwenk. *Id.* Schwenk also asked Acker for help, but she refused. *Id.*

Schwenk alleges that BCJ's handbook states that medical information should remain confidential, and that inmates should advise BCJ of any medical conditions they have. *Id.* at ECF p. 7. Despite telling BCJ of his chronic medical condition, it did not help him. *Id.*

Based on these allegations, Schwenk asserts section 1983 claims, alleging violations of his Eighth Amendment rights and a violation of chapters 10.3 (right to medical aid) and 10.4 (right to confidentiality) in the BCJ prisoner's handbook.[2] *Id.* at ECF p. 8. He also alleges that each of the defendants acted negligently and with no care for him as a human being, and that they were inconsiderate of his feelings and well-being. *Id.* at ECF p. 9. Schwenk claims that he has suffered humiliation, low self-esteem, and depression, for which he has received medication. *Id.* at ECF p. 10. He demands compensatory damages in the amount of $130,000. *Id.*

---

[2] Although Schwenk does not specifically allege as such, the court presumes that he is referring to chapters in the BCJ handbook.

## II.    DISCUSSION

### A.    The IFP Application[3]

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court

---

[3] The court deems Schwenk's request to seek *in forma pauperis* status, even after release, as sufficient for compliance under 28 U.S.C. § 1915, as a non-prisoner.

costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application, it appears that Schwenk is unable to pay the costs of suit. Therefore, the court will grant him leave to proceed *in forma pauperis*.

### B.     Standard of Review

Because the court has granted Schwenk leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard

used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted). In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Higgs v. Attorney Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).

## C.   Analysis

Schwenk brings the instant action under section 1983. Compl. at ECF p. 8. Section 1983 provides in pertinent part as follows:

> Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983 (emphasis added). When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

7

Section 1983 claims may not be predicated on a state actor's mere negligence. *See Canton v. Harris*, 489 U.S. 378, 387 (1989) (holding that mere negligence in training cannot form basis of section 1983 liability); *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (holding that official's mere negligence is not actionable under section 1983 because "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property").[4] Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Here, the complaint does not specifically allege personal involvement by any of the defendants. The only evidence to which Dooley points to show Wetzel knew of Dooley's mental health needs is the fact that he sent Wetzel a copy of documents reflecting his GBMI verdict and request for D Code designation and Wetzel's lack of any response or action. But this evidence does not demonstrate the personal direction or actual knowledge required under *Rode*, and Dooley's allegations of Wetzel's involvement are insufficient.").

The court addresses each of Schwenk's section 1983 claims in turn.

### 1.    Claims Against BCJ

Schwenk may not assert a section 1983 claim against BCJ. As evidenced by a review of the statute, section 1983 "applies only to 'persons.'" *Fraser v. Pa. State Sys. of Higher Educ.*, No. CIV. A. 92-6210, 1994 WL 242527, at *5 (E.D. Pa. June 6, 1994), *aff'd*, 52 F.3d 314 (3d Cir. 1995). A county correctional facility is not a "person" amenable to suit under section 1983. *See Regan v. Upper Darby Twp.*, Civ. A. No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009) (stating that "a prison or correctional facility is not a 'person' that is subject to suit under

---

[4] Schwenk alleges that all defendants acted negligently and without regard to his well-being. Compl. at ECF p. 9. To the extent his section 1983 claims are based on negligence, they do not state a plausible claim.

federal civil rights laws"), *aff'd*, 363 F. App'x 917 (3d Cir. 2010); *see also Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) (per curiam) (concluding that district court properly dismissed claims against county prison because even though "[a] local governmental agency may be a 'person' for purposes of § 1983 liability[, the county prison] is not a person capable of being sued within the meaning of § 1983" (internal citations omitted)); *Mincy v. Deparlos*, 497 F. App'x 234, 239 (3d Cir. 2012) (per curiam) (determining that district court properly concluded that county prison is not "person" within meaning of section 1983). Accordingly, the court will dismiss with prejudice Schwenk's section 1983 claim against BCJ as frivolous because it is not a "person" within the meaning of section 1983. *See Santana v. Berks Cnty. Jail System*, Civ. A. No. 20-1226, 2020 WL 3574544, at *3 (E.D. Pa. July 1, 2020) ("Any § 1983 claims against the Berks County Jail System must be dismissed as frivolous because a prison is not a 'person' amenable to suit under Section 1983." (citation omitted)).

## 2.    Claims Against PrimeCare

Schwenk alleges an Eighth Amendment violation by PrimeCare insofar as its staff failed to consistently provide medication to control his diarrhea. Generally, "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)). Rather, to hold a private health care company like PrimeCare liable for a constitutional violation under section 1983, Schwenk must allege that the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]."[5] *Natale*,

---

[5] To assert a plausible claim under section 1983, Schwenk "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the applicable pleading standard. *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted). A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "Customs" are

318 F.3d at 583–84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty. Okl. v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, Civ. A. No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." (citations and internal quotation marks omitted)).

Here, Schwenk does not allege that PrimeCare had a relevant policy or custom that caused the violation he alleges occurred. Instead, his allegations relate to "the isolated treatment of [him] in particular." *Beard v. Corizon Health, Inc.*, Civ. A. No. 14-4129, 2017 WL 368037, at *4 (E.D. Pa. Jan. 24, 2017). As a result, the court must dismiss his claim because he has failed to state a plausible claim against PrimeCare.

---

practices so permanent and well-settled as to virtually constitute law. *Monell*, 436 U.S. at 691. Regardless of whether a plaintiff is seeking to impose *Monell* liability for a policy or a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (explaining that in both methods to obtain liability under *Monell*, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom").
    In addition,

> [t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is there "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Bryan County*, 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice is likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Id.* at 417–18, 117 S.Ct. 1382 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Berg*, 219 F.3d at 276 (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

*Natale*, 318 F.3d at 584 (alterations in original) (internal footnote omitted).

### 3.      Eighth Amendment Claims Against Lopez and Acker

The court understands Schwenk to be asserting two distinct Eighth Amendment claims against Lopez and Acker: one based on the failure to provide adequate medical care, and one based on cruel and unusual punishment. Neither claim is plausible for the reasons set forth below.

#### a.      Claims Based on Deliberate Indifference to Serious Medical Needs

Schwenk claims that the defendants provided him inadequate medical care to address his diarrhea, in violation of his Eighth Amendment rights. To state a constitutional claim based on the failure to provide medical treatment, a plaintiff must allege facts indicating that prison officials were deliberately indifferent to his serous medical needs.[6] *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted). A plaintiff properly alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical

---

[6] Because Schwenk alleges that he was a convicted prisoner at the time of the events in question, the Eighth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Nonetheless, the standard under the Eighth Amendment and Fourteenth Amendment (which would apply to claims of pretrial detainees) related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Miller v. Steele-Smith*, 713 F. Appx. 74, 76 n.1 (3d Cir. 2017) ("Because a Fourteenth Amendment claim for inadequate medical care is analyzed pursuant to the same standard applied to an Eighth Amendment claim, we will analyze [the pretrial detainee plaintiff's] claim in accordance with that familiar framework." (citation omitted)); *Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (declining to address whether new standard applies to claims raised by pretrial detainees based on issues related to medical care).

treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

According to the complaint, Lopez and Acker refused to help Schwenk, despite being aware of his uncontrollable diarrhea. Compl. at ECF pp. 4, 6. Nonetheless, Schwenk does not allege that Lopez or Acker are medical personnel, so they cannot be sued for deliberate indifference to his serious medical needs. "If a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill*, 372 F.3d at 236; *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (per curiam) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff."). Because Lopez and Acker are nonmedical prison officials, and Schwenk does not allege that they were aware that PrimeCare was improperly treating or not treating him, the allegations in the complaint are insufficient to state a plausible claim for deliberate indifference against them, and the court must dismiss this claim with prejudice.

Schwenk has not named as a defendant an appropriate prison official who was deliberately indifferent to his serious medical needs. Therefore, the complaint does not state a plausible claim at this time.

b.    <u>Claims Based on Cruel and Unusual Punishment</u>

It also appears that Schwenk is asserting a claim that he was subjected to cruel and unusual punishment due to his medical issues in the form of ridicule and humiliation, confinement to his

cell and in solitary, and reprimands about his unsanitary condition. As discussed below, Schwenk has failed to state a plausible claim based on any of these actions.

Schwenk's claim that Lopez and Acker ridiculed and humiliated him is implausible. Verbal threats or taunts, without more, are insufficient to violate the Constitution. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (holding that threats that inmate was "a marked man and that his days were numbered" did not state claim for violation of Eighth Amendment); *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (holding that threat to spray inmate with mace did not violate Eighth Amendment); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.").

As to the balance of Schwenk's claims, the Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement. *Hubbard*, 399 F.3d at 166. Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (alterations in original) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) and *Bell v. Wolfish*, 441 U.S. 520, 538–39 & n.20 (1979)). In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Farmer*, 511 U.S. at 837 ("We hold that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or

safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner plaintiff must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (stating that Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials provide "humane conditions of confinement"). Such necessities include food, clothing, shelter, medical care, and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).

The relevant allegations here are that Lopez and Acker (through C.O. Loomis) disciplined Schwenk for unsanitary conditions by placing him for 30 minutes in the "bird cage" during outdoor recreation, confining him to his cell for 24 hours without access to a shower, and putting him in solitary confinement for two days. These allegations do not establish that these defendants denied Schwenk "the minimal civilized measure of life's necessities," *Rhodes*, 452 U.S. at 347, and are insufficient to state a plausible Eighth Amendment claim. *See Sandin v. Conner*, 515 U.S. 472, 485–86 (1995) (explaining that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of inmate's sentence). Therefore, the court will dismiss this Eighth Amendment claim with prejudice.

### 4.      Claims for Violations of the BCJ's Inmate Handbook

As indicated above, Schwenk appears to attempt to assert claims against the defendants for violations of BCJ's inmate handbook. *See* Compl. at ECF p. 8. Nonetheless, "[a]s many courts have held, corrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures." *Bowman v. Wetzel*, Civ. A. No. 2:20-

cv-135, 2020 WL 3258946, at *6 (W.D. Pa. June 16, 2020) (citing cases); *see also Curry v. McCann*, Civ. A. No. 18-5444, 2019 WL 77441, at *7 (E.D. Pa. Jan. 2, 2019) ("Even if Curry was asserting a claim against C.O. McCann based on this questioning, 'a prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983.'" (quoting *Laufgas v. Speziale*, Civ. A. No. 04-cv-1697 (PGS), 2006 WL 2528009, at *7 n.7 (D.N.J. Aug. 31, 2006))). Accordingly, to the extent that Schwenk has attempted to assert a section 1983 claim against the defendants based on violations of BCJ's inmate handbook, the court dismisses this claim with prejudice for the failure to state a claim.

## III.    CONCLUSION

As indicated above, Schwenk cannot assert a section 1983 claim against BCJ because it is not a "person" subject to suit. He has also failed to allege a plausible claim against PrimeCare because he has not alleged that it had an unconstitutional policy or custom that caused the alleged constitutional violation. Schwenk further has failed to state a plausible claim for a violation of his Eighth Amendment rights against Lopez or Acker. Therefore, although the court will grant Schwenk leave to proceed *in forma pauperis*, the court will dismiss the complaint with prejudice except for the claims against PrimeCare, Lopez, and Acker for deliberate indifference to his serious medical needs, which the court dismisses without prejudice. The plaintiff may file an amended complaint should he be able to assert plausible claims against these defendants.[7]

---

[7] Generally, the court should provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). Also, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.